**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

DOMINIC MADER                    :

    Plaintiff,                    :

                                     Case No. 3:10CV0263

 vs.                    :

                                       District Judge Walter Herbert Rice

MICHAEL J. ASTRUE,                    :   Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,                    :

    Defendant.                    :

---

# REPORT AND RECOMMENDATIONS[1]

---

## I.    INTRODUCTION

Plaintiff Dominic Mader brings this case challenging the Social Security Administration's denial of his application for Disability Insurance Benefits (DIB). This Court has jurisdiction to review the administrative denial of his DIB application. *See* 42 U.S.C. §§405(g), 1383(c)(3).

This case is before the Court upon Plaintiff's Statement of Specific Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), the administrative record, and the record as a whole.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff asserted in administrative proceedings that he was eligible to receive DIB because he was under a "disability," as defined by the Social Security Act. In the present case, Plaintiff seeks an Order reversing the Commissioner's non-disability decision, as well as granting him benefits prior to October 12, 2007. The Commissioner contends that an Order affirming the ALJ/Appeal Council's decision is warranted.

## II.   Background

### A.   Procedural History

Plaintiff filed his DIB application on January 10, 2005, asserting that he has been under a "disability" since July 15, 2003. (Tr. 62-65). Previously, in January 2005, Plaintiff submitted a report to the Social Security Administration stating that neuropathy and disc degeneration in his neck limited his ability to work by causing problems with right hand and arm functionality. (Tr. 81-82). In March 2005, Plaintiff submitted an updated report to the Social Security Administration indicating that he also suffered from severe depression. (Tr. 121).

Following initial administrative denials of his application, Plaintiff received a hearing before Administrative Law Judge (ALJ) Melvin A. Padilla. ALJ Padilla later issued a written decision concluding that Plaintiff was under a disability beginning on January 18, 2008, based on the assessment of a state agency consulting examination. (Tr. 33). Before then, according to the ALJ, Plaintiff was not under a disability and he was not eligible to receive DIB. (Tr. 32). The Appeals Council allowed Plaintiff's request for review and found that Plaintiff was entitled to a period of disability or

2

disability insurance benefits based on disability commencing on October 12, 2007.  (Tr. 9-13).

**B.**     **Plaintiff's Vocational Profile and Testimony**

Plaintiff was 43 years old on the alleged disability onset date.  Accordingly, he is considered a "younger individual" for purposes of resolving his DIB claim.  *See* 20 C.F.R. §404.1563(c); *see also* Tr. 32, 62.

Plaintiff has a high-school education and has completed one year of college.  (Tr. 85-86).  He has worked as a grinder/chipper in a factory, material handler, and glass products inspector.  (Tr. 82, 505).

Plaintiff testified at the administrative hearing that he is single and lives by himself in an apartment.  (Tr. 492).  He has a driver's license and drives once a week.  *Id.* Plaintiff works forty five minutes to one hour a day at his apartment complex. *Id.* He earns $9.00/hr for walking the premises and picking up trash. In August 2003, he stopped working as a foundry grinder due to a tremor in his hand.  (Tr. 493-94).  Plaintiff testified that he is disabled due to inability to use his right hand, right leg problems, and shaking. (Tr. 494-95).

Plaintiff reported that he cannot lift anything with his right hand, and can barely lift a gallon of milk.  (Tr. 494).  He reported that medication helps "the problem a little bit," but it also makes him drowsy.  (Tr. 495-96).  Plaintiff testified that some days his right hand shakes more than other days, *Id.*, and that it also occurs on the left side, albeit not as bad. *Id.*  He also said that he walks daily but seems to drag his feet more than

3

before.  *Id.*  He stated that his balance is "all messed up," *Id.*, and he uses a quad cane given to him at the Dayton Veterans Administration Medical Center ("VA").  *Id.*

Plaintiff estimated that on some days he could walk fifteen minutes at a time, stand one hour at a time, and sit thirty to forty-five minutes at a time.  (Tr. 497).  With his left hand, Plaintiff estimated he could lift ten to fifteen pounds.  (Tr. 498).  He also testified that "it takes quite a long time" to get dressed.  *Id.* As a result, Plaintiff had to buy new clothes and shoes, without buttons or ties.  *Id.*  He sleeps four to six hours at night without the use of sleep-aid medication and takes about six naps throughout the day. *Id.* These naps last from twenty to forty-five minutes each.  *Id.*  Plaintiff noted that he loses balance when he climbs stairs and that it is sometimes hard to lift his left foot.  (Tr. 499).

As to his daily activities, Plaintiff testified that he does not cook, but his brother does. Plaintiff also testified that he makes frozen dinners in the microwave. (Tr. 499).  He tries to wash his dishes, sweep, mop, and vacuum his apartment, *Id.*, however, his sister does his laundry, (Tr. 500), and his brother goes grocery shopping with him.  *Id.*  Plaintiff has a computer, but cannot use it, as he has a hard time with the keys.  *Id.*  Plaintiff used to attend church, but stopped going 8-9 months prior due to embarrassment.  (Tr. 500-01).

## C.    <u>Medical Records</u>

The key question in this case is the severity of Plaintiff's impairments before he was found disabled on October 12, 2007. Accordingly, the Court will summarize the record prior to that date.

Plaintiff visited Wayne Hospital on December 13, 2004, complaining of shakiness and weakness in his right hand, as well as limited range of motion and little control over his middle, ring, and pinky digits. Plaintiff reported that he suffered a back injury in May 2003, which he claimed had given him "trouble ever since due to repetitive motion during work." Plaintiff was diagnosed with right shoulder neuropathy. (Tr. 139-40).

In December 2004, Plaintiff began treatment at the VA. A cervical spine x-ray taken on December 15, 2004, showed severe narrowing of the C5-C6 disc spaces with spur formation. This was consistent with degenerative arthritic changes and straightening of the cervical lordosis. (Tr. 205, 295). The initial examining physician reported that Plaintiff's problems in the right upper extremity were related to degenerative changes in the cervical spine and he was referred to neurology. (Tr. 218-19).

At his initial physical therapy evaluation on January 5, 2005, Plaintiff's right shoulder showed some signs of impingement. (Tr. 215-17). When evaluated by an occupational therapist on January 10, 2005, Plaintiff reported that he woke up one morning with noticeable stiffness and weakness in his right hand, decreased sensation, and episodes of occasional involuntary tremors. (Tr. 213). Plaintiff told the occupational therapist that he quit his job in 2003 and left on "good terms" with his employer. Evaluation showed grip strength was reduced by half when compared to the left. (Tr. 214). Other measurements showed, "[s]trength is impaired as is quality of movement, both gross and fine motor for right UE [upper extremity]." *Id.* Plaintiff scored in the "extremely slow" range on manual dexterity test. On the 9-hole peg test, the right hand

5

scored more than seven standard deviations from the mean, while the left hand scored within normal limits.  (Tr. 212).

Plaintiff's first neurological examination took place on January 27, 2005, with Evelyn S. Brown, M.D.  Plaintiff complained of tingling and weakness in his right hand, and that he could hardly write his name.  Plaintiff felt he had no control over his right hand, however, he did note that the weakness may have been a little better since he started occupational therapy.  Plaintiff reported that he continued to work part-time for the Air National Guard, but his job was in jeopardy because he worked on helicopters.  When Plaintiff smiled, the left side of the face moved before the right.  Plaintiff exhibited no resting tremor and only a "very mild" action tremor in his right arm.  Examination revealed a very mild action tremor in the right upper extremity with increased tone. Plaintiff's right grip strength was "moderately weak," there was slightly reduced strength in Plaintiff's right arm, wrist, and fingers, and slight weakness in the proximal right lower extremity.  Plaintiff's gait was stiff, tending not to bend his leg when he walked and holding his right arm close to his body.  Plaintiff also had "a little balance problem" trying to walk on his toes, and "more trouble walking on his heels."  Dr. Brown did not make a diagnosis but noted that it would be "very unusual to have cervical radiculopathy of this severity and have it be painless."  Dr. Brown also found the acute to subacute onset of Plaintiff's symptoms to be worrisome.  She recommended a trial of Sinemet and ordered a CT of the brain.  (Tr. 204-06).

6

Plaintiff was seen by staff neurologist, Jordan Brooks, M.D. on February 17, 2005. Dr. Brooks observed a very rapid right hand tremor at rest that lasted only a few seconds. Dr. Brooks did note slow right fine finger movements. Dr. Brooks did not believe this was the typical "Parkinsonian rest tremor," but rather looked like a functional tremor. Dr. Brooks noted no other tremors. Plaintiff's gait was largely normal with only a decreased right arm swing. Plaintiff's tandem, heel, and toe gait was steady. Dr. Brooks stated that atypical Parkinsonian syndrome should be considered, but noted that Plaintiff was relatively young for this syndrome. Dr. Brooks ordered an MRI of Plaintiff's brain to rule out other causes. (Tr. 201-02). The MRI of the brain was normal, showing only evidence of minor left sinus disease. (Tr. 141, 202).

Dr. Brooks reported on May 27, 2005, that there had been no change in the examination since February. There were still slow right fine finger movements and a right arm tremor with decreased arm swing while walking. Sinemet caused headaches and was discontinued. Dr. Brooks stated that the cause of Plaintiff's symptoms was "not entirely clear," although Parkinson's disease and an atypical parkinsonian syndrome were possible diagnoses. Dr. Brooks recommended adding Mirapex and ordered an MRI of the cervical spine. (Tr. 189-90).

In a narrative report dated May 27, 2005, Dr. Brooks noted that Plaintiff was seen in the neurology clinic for a two to three year history of right arm clumsiness and rigidity. Dr. Brooks reported that treatment had provided only minimal benefit. Dr. Brooks concluded, "[t]he prognosis for significant functional improvement at this time is

7

unknown.  The [right] arm clumsiness currently impairs Mr. Mader's ability to work."
(Tr. 189).

A cervical spine MRI taken on June 13, 2005, showed mild to moderate
degenerative changes at several levels, most severe at the C5-C6 level with disc space
narrowing and endplate changes.  Neuroforaminal narrowing and central canal narrowing
were also detected at C5-C6.  (Tr. 151-52).  Prior to the examination, Plaintiff complained
that he could not hold his right arm still so he was given Versed.  (Tr. 151).

In a dietary assessment on July 12, 2005, Plaintiff reported that he "remain[ed]
very active daily," including walking upwards of five miles a day and lifting weights.
Plaintiff stated that he had always been very active in sports, and loved to bike, run, and
jog. (Tr. 185).

When seen by Dr. Brooks on August 30, 2005, Plaintiff reported resolution of his
right arm tremor and a mild improvement of his right arm dexterity.  On examination,
right fine finger movements were still slow, but there was no tremor and his gait remained
normal except for a decreased right arm swing.  (Tr. 181-82).  Dr. Brooks noted that the
cervical spine MRI did not explain Plaintiff's presentation.  (Tr. 182).

The administrative record does not contain any medical evidence from August
2005 until October 2007.

On October 12, 2007, Plaintiff was seen by Kenneth Harshbarger, M.D., for
evaluation.  Plaintiff complained of constant trembling.  On examination, Plaintiff's right
arm showed an action and resting tremor and there was an occasional right leg and left

8

arm tremor when he tried to use the right arm. Plaintiff could not do finger-to-nose testing on the right. Right leg strength was 3/5. Dr. Harshbarger prescribed Klonopin and Paxil. Dr. Harshbarger suspected a Parkinson type tremor. (Tr. 409-11).

Plaintiff was hospitalized on October 15, 2007, due to difficulty walking. Plaintiff reported that the medication he was prescribed had improved his tremor but had made his gait much worse. Plaintiff had a shuffling gait, weakness in his right arm, and a tremor that was worse in the right arm. The attending physician believed Plaintiff's symptoms were compatible with Parkinson's syndrome. (Tr. 398-99). The MRI of Plaintiff's brain, taken on October 17, 2007, showed no significant intracranial pathology. (Tr. 404). The MRI of Plaintiff's cervical spine, which was taken on the same date, showed degenerative changes at the C5-6 level. (Tr. 403).

## III.   Administrative Review

### A.   "Disability" Defined

The Social Security Administration provides DIB to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §423(a)(1)(D). The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70. A DIB applicant bears the ultimate burden of establishing that he or she is under a "disability." *Key v. Callahan*, 109 F.3d

270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

The term "disability" – as defined by the Social Security Act – carries a specialized meaning of limited scope.  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are "medically determinable" and severe enough to prevent the claimant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

**B.    Social Security Regulations**

Administrative regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* Tr. 21-26; *see also* 20 C.F.R. §404.1520(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review answers five questions:

1.    Has the claimant engaged in substantial gainful activity?

2.    Does the claimant suffer from one or more severe impairments?

3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4.     Considering the claimant's residual functional capacity,[2] can he perform his past relevant work?

5.     Considering the claimant's age, education, past work experience, and residual functional capacity, can he or she perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

C.     **ALJ Padilla's Decision**

ALJ Padilla's pertinent findings began at Step 2 of the sequential evaluation, where he concluded that Plaintiff had the following severe impairments: idiopathic Parkinsonian Syndrome mainly involving the right arm; degenerative disc disease in the cervical spine; and situational depression and anxiety.  (Tr. 27).

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled one in the Listings.  *Id.*

At Step 4 ALJ Padilla concluded that, prior to January 18, 2008, the date Plaintiff became disabled, he had the residual functional capacity to perform light work[3], subject to the following: only occasional lifting with the right upper extremity; no climbing ladders, scaffolds, or working at unprotected heights; frequent balancing; stooping, kneeling,

---

[2]   The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. §404.1545(a); *see Howard v. Commissioner of Social Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

[3]   The Regulations define light work as involving the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §404.1567(b).

crouching, crawling; occasional reaching overhead; occasional handling and fingering with the right upper extremity.  *Id.*

The ALJ further found at Step 4 that Plaintiff's mental impairments limited him to low stress jobs with no fast pace and no strict production quotas.  *Id.*

Since January 18, 2008, ALJ Padilla found that Plaintiff was disabled based on the examination findings performed by Stephen W. Duritsch, M.D. (Tr. 382-95), which demonstrated a progressive worsening of Plaintiff's symptoms of Parkinsonian Syndrome.  *Id.*

The ALJ concluded at Step 4 that Plaintiff was unable to perform his past relevant work as a grinder/chipper, material handler, or glass products inspector.  (Tr. 32, 505).

At Step 5 the ALJ concluded that before January 18, 2008, Plaintiff could perform a significant number of jobs in the national economy.  *Id.*  But beginning on January 18, 2008, based on the above residual functional capacity, the Vocational Expert testified that there were no jobs that could be performed.  Accordingly, ALJ Padilla used section 201.00(h) of the Medical-Vocational Guidelines and found Plaintiff to be disabled as of January 18, 2008. (Tr. 33).

The ALJ's findings throughout his sequential evaluation led him to ultimately conclude that Plaintiff was not under a disability before January 18, 2008, and he was therefore not eligible for DIB before that time.  (Tr. 24-34).

### D.    **The Appeals Council Decision**

The Appeals Council decided to reopen the ALJ's decision on March 16, 2010.

(Tr. 9).  On May 12, 2010, the Appeals Council issued its final decision, reversing the

ALJ's partially favorable decision and finding that Plaintiff was entitled to a period of

disability beginning on October 12, 2007.  (Tr. 9-13).  The Council explained its decision

as follows:

> . . . beginning October 12, 2007, the claimant's impairments are of a
> severity which meets Section 11.06 in Appendix 1, Subpart P, Regulations
> No.4. Although the Administrative Law Judge found that the claimant
> became disabled on January 18, 2008, because the detailed exam performed
> by Stephen W. Duritsch, M.D., demonstrated a progressive worsening the
> symptoms of Parkinsonian Syndrome (Exhibit 9F), the Appeals Council
> finds that the medical evidence of record supports that the earliest evidence
> of a progressive worsening of the claimant's symptoms is dated October 12,
> 2007, when Kenneth Harshbarger, M.D., reported that the claimant had an
> ataxic and unsteady gait, right arm action tremor and resting tremor, and
> occasional right leg and left arm tremor (Exhibit 11F) . . . .
>
> Prior to October 12, 2007, the Appeals Council adopts the Administrative
> Law Judge's findings that the claimant had severe impairments that did not
> meet or equal an impairment listed in Appendix 1 as well as his finding
> regarding the claimant's residual functional capacity for a limited range of
> light work.  Based on that residual functional capacity along with the
> claimant's age, education and past work experience, he was not under a
> disability because of the ability to perform jobs existing in significant
> numbers in the national economy (20 CFR 404.1520(g)) using the jobs
> named by the vocational expert at the hearing.

(Tr. 10).  The Appeals Council noted that in reaching its decision, it adopted the ALJ's

"statements regarding the pertinent provisions of the Social Security Act, Social Security

Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, as

applicable," but it did not adopt the ALJ's "findings or conclusions regarding whether the

claimant is disabled for the period beginning October 12, 2007." (Tr. 9).

13

IV.   **Judicial Review**

Judicial review of an ALJ's decision proceeds along two lines: " whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r. of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Warner v. Comm'r of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing the ALJ's legal criteria for correctness, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Social Security*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to

14

follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746 and citing *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.    Discussion

### A.    Plaintiff's Contentions

Plaintiff contends that the ALJ and the Appeals Council erred by finding that he became disabled on October 12, 2007.  Plaintiff argues that the record demonstrates that he was disabled in December 2004 when he began treatment.  Specifically, Plaintiff argues that the ALJ ignored opinions from Plaintiff's treating neurologist, Dr. Brooks. (Doc. #8 at 12).  Next, Plaintiff contends that the ALJ and the Appeals Council did not perform a proper credibility analysis.  (*Id.* at 16).  Finally, Plaintiff contends that all the identifiable jobs testified to by the vocational expert, save the surveillance-system monitor, exceed the manipulative limitations found by the ALJ.  (*Id.* at 18).

### B.    Medical Source Opinions

### 1.

### Treating Medical Sources

The treating physician rule, when applicable, requires the ALJ to place controlling weight on a treating physician's or treating psychologist's opinion, rather than favoring the opinion of a nonexamining medical advisor or a one-time examining physician or psychologist or a medical advisor who testified before the ALJ.  *Blakley,* 581 F.3d at 406

15

(6th Cir. 2009); *see Wilson*, 378 F.3d at 544 (6th Cir. 2004).  A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record.  *Id.*

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician."  *Blakley,* 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544).

More weight is generally given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources.  *See* 20 C.F.R. §404.1527(d)(1).  Yet the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight.  This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act."  Social Security Ruling 96-6p.  Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians, including supportability, consistency, and specialization.  *See* 20 C.F.R. §404.1527(d), (f); *see also* Ruling 96-6p at *2-*3.

**2.**

16

## Non-Treating Medical Sources

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p, 1996 WL 374180 at *2. Yet the Regulations do not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source. *See Id*. at *2-*3. The Regulations explain, "In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. §404.1527(b). To fulfill this provision, the Regulations require ALJs to evaluate non-treating medical source opinions under the factors set forth in §404.1527(d), including, at a minium, the factors of supportability, consistency, and specialization. *See* 20 C.F.R. §404.1527(f); *see also* Ruling 96-6p at *2-*3.

### C. Analysis

### 1.

Plaintiff first argues that the ALJ committed reversible error when he failed to give either controlling weight or deference to the May 2005 opinion of Plaintiff's treating neurologist, Dr. Brooks.

Dr. Brooks opined in May 2005 that "[t]he prognosis for significant functional improvement at this time is unknown. The [right] arm clumsiness currently impairs Mr. Mader's ability to work." (Tr. 189). This opinion is vague and conclusory and fails to specify what exactly Plaintiff could or could not do physically. As the ALJ noted,

17

> There were intermittent visits with VA neurologist (Dr. Brooks).  Physical exam was essentially normal in February 2005 except for four out of full five strength in the right ankle "though patient can perform heel walk without problems." There was "occasional very rapid right hand tremor at rest ... lasting few seconds - does not look like typical Parkinsonian rest tremor; looks functional.  No other tremor." Gait was essentially normal (Exhibit 8F at 29).  In May 2005 Dr. Brooks noted clumsiness with the right upper extremity and thought possibly this might be Parkinsonian Syndrome or Parkinson's disease (Exhibit 8F at 17).  In August 2005 exam findings were similar to before except there appeared to be less gait abnormality, and some mild improvement with the right arm was reported.  "Still no numbness, neck pain, limb pain, cramps, dysphagia, dysarthria, diplopia, visual loss, ataxia, vertigo, headache, fasiculations, atrophy, bowel/bladder dysfunction, memory loss, myoclonus, alien hand."

(Tr. 29).

While the ALJ did not explicitly reject or adopt Dr. Brooks' May 2005 opinion, his failure to do so was harmless error under *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).  In *Wilson*, the court noted that certain *de minimis* violations of §1527(d)(2) constitute harmless errors. *Id.* at 547  The court stated that where the Commissioner "adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant." *Id.* The court also found harmless error where a treating source opinion is "so patently deficient the Commissioner could not possibly credit it . . . ." *Id.*  Here, the ALJ's error was harmless under *Wilson*, as Dr. Brooks' 2005 opinion was patently deficient.

Dr. Brooks' 2005 opinion is not the type of opinion that the regulations consider worthy of deference.  *See* 20 C.F.R. § 404.1527(d)(2);. *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984) (broad conclusory statement of a treating physician that his patient is disabled is not controlling).[4]

Accordingly, Plaintiff's challenges to the ALJ's evaluation of Dr. Brooks' opinion lack merit.

## 2.

Plaintiff next maintains that the ALJ's failure to evaluate and make findings concerning the credibility of Plaintiff's testimony regarding his pain warrants remand.[5]

Pain or other symptoms may be severe enough to constitute a disability, if caused by a medical impairment.  *See Kirk v. Sec'y of Health & Human Serv.,* 667 F.2d 524, 538 (6th Cir. 1981) (pain alone may constitute a disability); *see also* 20 C.F.R. §404.1529. When evaluating pain or other symptoms, ALJs are required under the Regulations to consider all evidence, including medical history, medical signs and laboratory findings, the claimant's statements, and treating and other medical source opinions.  20 C.F.R.

---

[4]In fact, the record indicates that Dr. Brooks personally saw Plaintiff only twice prior to issuing his opinion: once in February 2005 and again in May 2005.  *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502) ("A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition'"); *Yamin v. Comm'r of Soc. Sec.*, 67 F. App'x 883, 885 (6th Cir. 2003) ("two examinations did not give Dr. Meerschaert a long term overview of Yamin's condition").

[5] The undersigned is persuaded by Plaintiff's contentions in this regard.  This finding obviates the need for in-depth analysis of Plaintiff's remaining assignments of error.

§404.1529(c)(1).  Although the Regulations concerning pain and other symptoms are

lengthy, the United States Court of Appeals for the Sixth Circuit has enunciated the

applicable standard in "a more succinct" two-part analysis.  *Felisky v. Bowen*, 35 F.3d

1027, 1038 (6th Cir. 1994). Part one considers "whether there is objective medical

evidence of an underlying medical condition." *Id.* (citation omitted).  If such objective

medical evidence exists, then part two requires consideration of two alternative questions:

> 1.  Whether objective medical evidence confirms the severity of
>     the alleged pain [or other symptom] arising from the
>     condition; or
>
> 2.  Whether the objectively established medical condition is of
>     such a severity that it can reasonably be expected to produce
>     the alleged disabling pain [or other symptom].

*Id.* at 1038-39. (citation omitted).

Neither *Felisky's* two-part test nor the Regulations upon which it is based require

objective medical evidence of pain itself.  *Id.* at 1039.  The Regulations promise, "we will

not reject your statements about the intensity and persistence of your pain or other

symptoms or about the effect your symptoms have on your ability to work solely because

the available objective medical evidence does not substantiate your statements." 20

C.F.R. §404.1529(c)(2).  Consequently, the Regulations require ALJs to consider a list of

factors, including the claimant's daily activities; the location, duration, frequency and

intensity of pain or other symptoms; precipitating and aggravating factors; type, dosage,

effectiveness and side effects of medications taken to alleviate symptoms; treatment,

other than medication, obtained for symptom relief; any measures used to alleviate pain

20

(*e.g.*, lying flat, standing 15 or 20 minutes every hour, sleeping on a board, etc.); and other factors concerning the claimant's functional limitations. 20 C.F.R. § 404.1529(c)(3)(i)-(vii); *see* Social Security Ruling 96-7p.

An ALJ's findings concerning the credibility of a claimant's testimony about his or her pain or other symptoms "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.* Through the Rulings, the Commissioner mandates, in part:

> The reasons for the credibility finding must be grounded in evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator to simply recite the factors that are described in the regulations for evaluating symptoms. The determination must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Social Security Ruling 96-7p, 1996 WL 374186.

Whether or not the ALJ found Plaintiff to be disabled prior to January 18, 2008, hinged upon his assessment of the credibility of Plaintiff's testimony.[6] At the hearing,

---

[6]The Appeals Council adopted and premised its credibility finding on the ALJ's decision. (Tr. 11). It is therefore appropriate for this Court to review the ALJ's determination on this issue. *See, Brooks v. Sullivan*, No. 90-5947, 1991 WL 158744, at *1 (6th Cir. Aug. 14, 1991) (citation omitted) ("Because the Appeals Council has reviewed the ALJ's decision, we must review the Council's opinion (and the relevant portions of the ALJ's opinion that it adopts) as the final decision of the Secretary."); *Taylor v. Comm'r of Soc. Sec.*, No. 95-3767, 1996 WL 400175, at *4 n.2 (6th Cir. July 16, 1996) (same).

Plaintiff reported that he cannot lift anything with his right hand, he can barely lift a

gallon of milk. (Tr. 494). He testified that some days his hand shakes more than other

days. (Tr. 496). He also testified that "it takes quite a long time" to get dressed. *Id.* He

had to buy new clothes and shoes, without buttons or ties. (Tr. 498). He had a computer,

but could not use it as he had a hard time with the keys. (Tr. 500).

> The ALJ assessed Plaintiff's credibility as follows:
>
> After considering the evidence of record, the undersigned finds that the
> claimant is credible that he has "severe" impairments but not that such
> impairments rendered him disabled prior to January 18, 2008.
>
> The claimant quit his job at the alleged onset date of July 2003. There is no
> evidence that he was fired secondary to any physical impairment. He did
> not seek treatment for his alleged tremor until December 2004 and then he
> stopped seeing any medical sources from October 2005 to October 2007.
> The evidence was reviewed in some detail above and does not show any
> serious physical incapacity through October 2005. Not long after he
> returned to seeking medical help in late 2007, a specialist exam showed
> significant findings indicating progressive worsening of his
> tremor disorder with more definitive diagnosis of Parkinsonian Syndrome.
> He is found disabled as of the date of that specialist exam in January 2008
> (Exhibit 9F).

(Tr. 32).

Despite the significance of the ALJ's credibility assessment, and even though the

ALJ summarized Plaintiff's testimony, the administrative decision contains no indication

that the ALJ even considered Plaintiff's testimony in determining his residual functional

capacity or in finding him disabled as of January 18, 2008.

To be upheld, an ALJ's decision must be reasonable in light of the record as a

whole and "take[] into account whatever in the record fairly detracts" from the decision.

*Claiborne-Hughes Health Ctr. v. Sebelius*, 609 F.3d 839, 843 (6th Cir. 2010). "'[F]ailure to consider the record as a whole undermines the [Commissioner's] conclusion.'" *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 776 (6th Cir. 2008) (quoting *Hurst v. Sec'y of Health & Human Serv.*, 753 F.2d 517, 519 (6th Cir. 1985)). Consequently, the Sixth Circuit has held:

> In the absence of an explicit and reasoned rejection of an entire line of evidence, the remaining evidence is "substantial" only when considered in isolation. It is more than merely "helpful" for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) (quoting *Hurst*, 753 F.2d at 519); *see also Adkins v. Astrue*, No. 2:10-cv-030, 2010 WL 4939953, at *10 (S.D. Ohio Oct. 8, 2010) ("'[T]he administrative law judge must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position.'") (quoting *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)).

Here, the ALJ's failure to consider and assess the credibility of Plaintiff's testimony undermines his decision and deprives this Court of its ability to conduct meaningful judicial review. The Commissioner urges the Court to afford deference to the ALJ's credibility finding, asserting that "[t]he ALJ, and the Appeals Council, which adopted these findings prior to October 12, 2007, reasonably concluded Plaintiff's allegations of disabling symptoms and limitations were not credible and provided several well-supported and logical reasons for making this determination." (Doc. # 11 at 16). Although the Court agrees that "[t]he ALJ's assessment of credibility is entitled to great

23

weight and deference," *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008), here, there is no assessment to evaluate.  Further, the ALJ, and not this Court, must decide the question of Plaintiff's credibility.  *See Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (citation omitted) ( "We will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility.").  Consequently, remand under these circumstances is warranted.


**VI.**　**Remand Is Warranted**

If an ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).  Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding.  *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case, because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak.  *See Faucher*, 17 F.3d at 176.  Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant

to Sentence Four of §405(g), due to the errors outlined above.  On remand, the ALJ should be directed to (1) re-evaluate Plaintiff's credibility under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) reconsider, under the required sequential evaluation procedure, whether Plaintiff was under a disability prior to October 12, 2007, and thus eligible for DIB.  Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

### IT IS THEREFORE RECOMMENDED THAT:

1.    The Commissioner's non-disability finding be vacated;

2.    No finding be made as to whether Plaintiff Dominic Mader was under a "disability" within the meaning of the Social Security Act;

3.    This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report and Recommendations; and,

4.    The case be terminated on the docket of this Court.


June 16, 2011                                          s/Sharon L. Ovington
                                                        Sharon L. Ovington
                                                  United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).